[Crim. No. 16746. Second Dist., Div. Four. Apr. 6, 1970.]

THE PEOPLE, Plaintiff and Appellant, v.
FRANK ROBERT MARTINEZ et al., Defendants and Respondents.

## COUNSEL

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Evelle J. Younger, District Attorney, Harry Wood and Eugene D. Tavris, Deputy District Attorneys, for Plaintiff and Appellant.

Richard S. Buckley, Public Defender, James L. McCormick, Dale C. Frailey and Lawrence R. Johnson, Deputy Public Defenders, for Defendants and Respondents.

## OPINION

**JEFFERSON, J.**—This is an appeal by the People (under Pen. Code, § 1238, subd. 7), from an order of dismissal entered after evidence was suppressed under Penal Code, section 1538.5. For reasons to follow, we have concluded that the order of dismissal must be reversed.

On December 9, 1968, at about 5:15 p.m., Officer Sonntag and his partner were on routine patrol in a marked police vehicle when they turned onto Ardilla Street in a developed residential area of Valinda (an unincorporated area of Los Angeles County). It was then twilight and as they approached the vicinity of 329 Ardilla the headlights of the patrol unit hit on the cars parked along the street. Officer Sonntag observed that one of the parked cars had occupants in it. It was headed in the same direction they were headed. The vehicle was parked in front of 329 Ardilla. The houses in the vicinity were unlighted. As they drew nearer to the occupied vehicle, their headlights lit up its interior and Sonntag observed that there were four men seated in it. Sonntag then observed that they all turned around and looked in the direction of the patrol car. There were looks of surprise and fear on their faces. One of the men then immediately turned back around and bent over. He appeared to be attempting to place something under the right front seat where he was sitting. Sonntag was aware that this was a high frequency burglary area and he decided to check out the suspicious conduct of the men.

The patrol car was stopped behind them and both officers alighted and approached the parked vehicle. Sonntag walked up on the passenger side while his partner took the other side. Sonntag looked through the window of the car and observed that defendant Schroeder was seated in the right front seat; defendant Martinez was in the driver's seat and defendants Till and Reed were in the back seat. Sonntag then, still looking through the window, looked down at the floorboard where he had observed Schroeder bending, and saw an open box containing a package of zigzag cigarette papers and what appeared to be marijuana debris. After making this observation defendants were ordered out of the car. As Schroeder and Martinez got out, Sonntag saw them both stuff objects into cuts in the upholstery of the seats. Sonntag retrieved the objects and found that what Schroeder had concealed was a Kool cigarette package containing what appeared to be marijuana cigarettes. Martinez had attempted to conceal two red capsules which appeared to contain seconal. Defendants were then placed under arrest.

All of the defendants were subsequently charged with possession of marijuana. Martinez was additionally charged with possession of seconal. The items found in the car were admitted in evidence at the preliminary hearing. It was stipulated that the items were determined to be marijuana and seconal as Sonntag had surmised. This was the evidence suppressed by the superior court after the section 1538.5 hearing.[1]

---

[1]Procedurally, at the hearing defendants Martinez, Reed and Till initially submitted the matter on the transcript of the preliminary hearing which consisted in the testimony of Officer Sonntag. Defendant Schroeder refused to submit on the tran-

When it made its ruling on the motion to suppress, the court was asked whether it accepted the testimony of Officer Sonntag as the truth. The record reflects that the court made the following response: "THE COURT: Absolutely. I am taking the officer's statement as the truth. This is not a question of fact; it is a question of law, so we have no problem with the facts whatsoever. I am granting the motion. I am granting it and I am stating the following: That I believe the officer who testified both in the transcript and on the stand, and I am finding this only as a matter of law. . . ."

■ The single issue presented in this appeal is whether the evidence establishes, as a matter of law, that the officers lacked justification to stop their patrol car and approach the parked car occupied by defendants to investigate what they believed was suspicious conduct on the part of defendants. We conclude that the facts establish that the officers' action was justified.

■ A police officer may, in the discharge of his duties, stop and question persons on public streets either in cars or on foot, when the circumstances are such as to indicate to a reasonable man in a like position that such a course of action is called for in the proper discharge of those duties. (*People v. One 1960 Cadillac Coupe,* 62 Cal.2d 92, 95-96 [41 Cal.Rptr. 290, 396 P.2d 706]; *People v. Blackmon,* 276 Cal.App.2d 346, 347-348 [80 Cal.Rptr. 862].) "[A]n officer of the law, employed to maintain the peace and to prevent crime, as well as to apprehend criminals after the fact, has both the right and the duty to make reasonable investigation of all suspicious activities even though the nature thereof may fall short of grounds sufficient to justify an arrest or a search of the persons or the effects of the suspects. Experienced police officers naturally develop an ability to perceive the unusual and suspicious which is of enormous value in the difficult task of protecting the security and safety of law-abiding citizens." (*People v. Cowman,* 223 Cal.App.2d 109, 117 [38 Cal.Rptr. 528].)

Among the factual situations deemed sufficient to justify "routine investigation" such as we have in the case at bench, are the following: Two men were found in a parked automobile on a "lover's lane" at night

---

script and called the officer as a witness. His testimony was in the essential respects the same as his testimony at the preliminary hearing. Pursuant to the request of the other three defendants, the court was then permitted to also consider the officer's testimony at the hearing in connection with their own motions to suppress. Defendant Schroeder then testified and the hearing concluded. Since the court accepted the testimony of the officer (see following discussion), Schroeder's testimony need not be considered in reviewing the lower court's ruling.

(*People* v. *Martin,* 46 Cal.2d 106, 108 [293 P.2d 52]); an automobile was found parked on a secluded road at night which proceeded to drive off at the approach of the officer's patrol car (*People* v. *Ellsworth,* 190 Cal. App.2d 844 [12 Cal.Rptr. 433]); an automobile occupied by three men was observed parked in a commercial area near premises burglarized twice in the past and where one of the men left the car, walked around the side of a building and later returned (*People* v. *Sackett,* 260 Cal. App.2d 307 [67 Cal.Rptr. 157]); several persons were seen entering a double-parked taxi at 3 a.m. (*People* v. *Blodgett,* 46 Cal.2d 114, 116-117 [293 P.2d 57]); three men were found in a parked car at 12:30 a.m. looking at a motel (*People* v. *Cowman, supra,* 223 Cal.App.2d 109); a car was observed coming out of a commercial area at 9:30 p.m. where the businesses, mostly auto wreckers, were usually closed (*People* v. *Beverly,* 200 Cal.App.2d 119, 125 [19 Cal.Rptr. 67]); a person was observed sitting alone in an illegally parked vehicle late at night on a side street (*People* v. *Mosco,* 214 Cal.App.2d 581, 585 [29 Cal.Rptr. 644]); officers at 3:30 a.m. saw a vehicle with two occupants in it which they had observed about half an hour before with only one occupant, and, when they turned on their red light, "the passenger immediately slid down in the seat as though placing something under the seat or on the floor." (*People* v. *Porter,* 196 Cal.App.2d 684, 685 [16 Cal.Rptr. 886]); in a high frequency burglary area, a man was observed walking in the rain carrying an unprotected typewriter and who, upon apparently seeing the officer's patrol car, changed direction (*People* v. *Manis,* 268 Cal.App.2d 653 [74 Cal.Rptr. 423]); a vehicle started to pass officers driving in an unmarked patrol car which was equipped with spotlights and series "E" plates, but then, when the occupants looked over at the officers' car, one occupant ducked down out of sight and the vehicle, instead of passing, dropped back behind the officers' car (*Williams* v. *Superior Court,* 274 Cal.App.2d 709 [79 Cal.Rptr. 489]).

█ Here, the officers were patrolling a high frequency burglary area when they came upon a parked car occupied by four men on an apparently otherwise deserted street. When their headlights lit up the interior of the car, the four men turned around and looked in the direction of the patrol car. Apparently recognizing it as a police car, expressions of fear and surprise registered on their faces. One of the men then made a furtive movement. He immediately turned back around and bent over. It appeared that he was attempting to place something under the seat. Alluding to the significance of a similar movement made by a suspect, the court in *People* v. *Shapiro,* 213 Cal.App.2d 618 [28 Cal.Rptr. 907], had this to say (p. 621): " 'It is a natural impulse on confrontation to hide immediately any contraband' one may have in

his possession. The significance of defendant's movement is that it was made almost immediately upon realizing she was to be confronted by the police. They could reasonably draw the inference that defendant was simply exercising 'a natural impulse.' "

Under the circumstances presented in this case, the officers acted reasonably and in the proper performance of their duties in stopping to investigate the suspicious conduct they had observed.

The order is reversed.

Files, P. J., and Kingsley, J., concurred.