[Crim. No. 17303. Second Dist., Div. Four. May 25, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD EARL WILLIAMS, Defendant and Appellant.

## COUNSEL

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and James H. Kline, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**DUNN, J.**—Following a second nonjury trial, defendant was found guilty of burglary (Pen. Code, § 459), fixed by the court at second degree, and he was sentenced to serve six months in the county jail (Pen. Code, § 461), to run concurrently with a sentence he was then serving under judgment of a federal court.

His appeal from the judgment rests on his claim that a confession given to the police was improperly admitted in evidence against him.

On January 2, 1969, appellant was arrested in an apartment in Pasadena shared with a woman named Karen Topping. In the apartment at

the time of his arrest were Miss Topping and one Mark Harryman. Initially, there were four counts in the information filed against appellant, all felonies. Count I charged him with possession of marijuana on January 2, 1969, count II with burglary between December 7-9, 1968, count III with burglary on December 29, 1968 and count IV charged him and Harryman, jointly, with a burglary on December 27, 1968.

At the time of the first trial, Harryman pled guilty to count IV. By stipulation, appellant was tried upon the transcript of evidence received at his preliminary hearing. Appellant was found not guilty of counts I, III and IV but guilty of count II. Thereafter he was granted a new trial. At his second nonjury trial he again was found guilty of count II upon the basis of the same evidence.

The confession appellant gave to the police related only to count II. Its admissibility was argued at length during the second trial. In the course of argument, counsel stated that at the first trial, appellant had been found not guilty of counts I, III and IV because the trial judge concluded the physical evidence there offered against him was obtained as the result of an illegal arrest and illegal search. The same statement is made in briefs on appeal and we accept it for the purpose of discussion, although the record of the first trial has not been furnished to us. The facts surrounding the obtaining of appellant's confession will now briefly be outlined.

The burglary charged in count II occurred at the M & M Manufacturing Company, of Pasadena, sometime between December 7 and 9, 1968. On Monday morning, December 9th, signs of forcible entry to the building were observed and apparently were reported to the police, though it was not then reported that anything was taken.

Sometime the morning of January 2, 1969, or on the day before, narcotics officers had arrested one Charles Defore and filed a complaint charging him with narcotics violations. A stamping machine was discovered in his possession. This information was given to the Pasadena Police Department which ascertained the machine had been stolen from the M & M company. The police then interrogated Defore who told them he received the machine from a man named "Richard" whom he physically described but whose last name was unknown. He stated Richard was living on Orange Grove Boulevard with a girl named Karen and that both were heavy narcotics users and were supplying their habits by burglaries and by forging checks. He stated he had traded some "acid" to Richard for the machine, also informing the police that Richard was involved in burglaries of a camera shop and a bar and that he and Karen still possessed stolen articles. A photograph of Richard Williams, a subject known to

police, was shown to Defore who identified him as "Richard," the appellant herein.

Police officers went to the apartment and arrested appellant, Karen Topping and Harryman. Their search disclosed the contraband involved in counts I, III and IV. The officers had no warrant of any kind.

Two officers entering the apartment through the front door arrested Harryman and Topping. Officers stationed at a rear door observed appellant on a screen porch with an open box containing marijuana and narcotics paraphernalia in his hands. They opened the screen door and arrested him.

After appellant was arrested, he was transported to the Pasadena Police Department and subsequently questioned by Officer Bertsche, the investigating officer. This occurred in mid-afternoon. Appellant first was advised of his constitutional rights; he stated that he understood them and wished to waive them. The officer pointed to the stamping machine, sitting on his desk, and stated, "We came to your house, Richard, to talk to you about that machine." Richard stated, "I know where you got that from." Bertsche said, "Yes, do you want to tell me where you got it from?" Appellant responded, "Well, Mr. Defore told me where the machine was located in the business; and I went in and took it, and then I traded it to Mr. Defore for some acid." It is this conversation which appellant contends was improperly admitted. (There was further brief questioning, not here pertinent, relating to credit cards involved in another count of the information.)

Appellant frames several arguments in support of his contention that the trial court erred. ██ First, he argues that the confession was a tainted product of his illegal arrest, relying upon *People* v. *Johnson* (1969) 70 Cal.2d 541 [75 Cal.Rptr. 401, 450 P.2d 865]. Respondent points to many distinctions from *Johnson,* and principally relies upon *People* v. *Martin* (1966) 240 Cal.App.2d 653 [49 Cal.Rptr. 888], although relying also upon language in the *Johnson* case.

Appellant argues that, but for the illegal arrest, he would not have been questioned at all, for which reason his confession was a product of illegal police procedures. The "but for" rule, however, is not a guiding principle in determining admissibility under the circumstances here outlined. After discussing the United States Supreme Court decision in *Wong Sun* v. *United States,*[1] our Supreme court in *Johnson, supra,* stated (p. 549): "We do not suggest that evidence should be inadmissible merely because 'but

---

[1](1963) 371 U.S. 471 [9 L.Ed.2d 441, 83 S.Ct. 407].

for' the unlawful act the evidence objected to would not have been obtained. Nor do we suggest that the mere occurrence of an unlawful act determines the lawfulness of other evidence related to the unlawful act.

"However, where the acts intervening between the defendant's confession and the unlawful search have in fact been induced by the authorities' exploitation of the unlawful search, and where the confession was in fact induced by the authorities' exploitation of those intervening acts, the road from the unlawful search to the confession, even if long, is straight, and adherence to the laudable policies underlying the exclusionary rule requires a conclusion that the confession is the fruit of the unlawful search. To hold otherwise would permit the authorities to profit from their unlawful activity and furnish an incentive for unlawful searches in violation of the Fourth and Fourteenth Amendments in the hope that the direct fruits of the search might be manipulated in such a way as to produce admissible evidence."

*Johnson* involved the unlawful seizure of a television set which was used in questioning Howard who confessed, implicating appellant Johnson. Thereafter Howard and Johnson were questioned together, Howard repeating his confession implicating Johnson and Johnson then confessing. The Supreme Court in *Johnson* distinguished this situation from our own, stating (pp. 551-552): "In *Rogers* v. *Superior Court* . . . we found a basic distinction between evidence seized in violation of search and seizure provisions and voluntary statements made during an illegal detention. 'The voluntary admission is not a necessary product of the illegal detention; the evidence obtained by an illegal search or by a coerced confession is the necessary product of the search or of the coercion.'

"The distinction in *Rogers* is similarly applicable to the effect of a *Miranda* warning on a confession obtained by confrontation with evidence secured by an unlawful search, and a confession following an illegal arrest. Cases where a confession follows an unlawful arrest, and those where the confession follows a confrontation of the defendant with illegally seized evidence are distinguishable. In the latter case, the illegality induces the confession by showing the suspect the futility of remaining silent. (See *People* v. *Spencer, supra,* . . . ['The secret is out for good.'] Where, as in *Martin,* a confession follows a false arrest, the custodial environment is merely one factor (though a significant one) to be considered in determining whether the confession is inadmissible."

It is thus clear that the "but for" rule is inapplicable and inquiry must be made to determine if circumstances, occurring between the illegal arrest and the confession, were of such a nature and quality so as to attenuate the effect of the arrest and show that the confession more probably was based

on factors other than the compulsion of illegal custody. ▮ The burden is on the prosecution, under the circumstances outlined, to prove attenuation of the taint attached to the illegal arrest. (*People* v. *Johnson, supra,* pp. 554-556). Whether or not such attenuation exists is a question of fact for the trial court to resolve. (*People* v. *Martin, supra,* 240 Cal.App.2d at p. 657, cited and distinguished, but not disapproved, in *People* v. *Johnson, supra.*)

▮ In the present case lengthy argument was heard, following which the trial court determined attenuation was established by the evidence. It was pointed out that appellant was not interrogated at the scene of his arrest or in the police car parked outside, but only after arrival at the police department premises, and after receiving a full statement of his *Miranda* rights.[2] The stamping machine exhibited to him was legally obtained. This is conceded by appellant. There was sufficient evidence to justify the trial court's conclusion that the confession was free and voluntary and was not a "fruit" of his unlawful arrest. (Also see: *People* v. *Magana* (1969) 272 Cal.App.2d 388 [77 Cal.Rptr. 436].)

▮ Appellant next argues that his confession resulted not alone from the circumstances outlined but because, when he confessed, he believed that he might be prosecuted for other burglaries and for possession of marijuana. Thus, it is argued that an illegal search had produced evidence leading appellant to believe he would be charged with the crimes later outlined in counts I, III and IV of the information; under the compulsion of this belief, appellant confessed to the crime involved in count II.

Appellant did not testify at his preliminary hearing or at his trials, so that his state of mind when confessing is a matter of pure speculation. Appellant argues that the prosecution, nevertheless, did not meet its burden of proof in establishing attenuation. However, we conclude that the evidence was such that the prompting cause of his confession was a matter for the trial court to determine and it acted within its discretion.

▮ Appellant's third argument regarding admissibility of the confession is differently founded. He contends that, though he was given appropriate warning of his constitutional rights under *Miranda,* he was not in mental or physical condition to understand these warnings and validly to waive his rights. He argues that the evidence established he was suffering from narcotic withdrawal symptoms such that his confession did not represent an act of free will.

This contention is not supported by the evidence. The same argument

---

[2]*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

was made in the lower court. Officer Bertsche testified to considerable experience in narcotics matters. He testified that when he was interviewing him, appellant started to shake. He inquired if appellant wished to see a doctor, telling him he could if he wanted to do so. Appellant declined the offer. Appellant spoke coherently and the officer had no trouble understanding him. He testified that appellant ". . . was starting to shake a little bit and the indication was he was going to go through withdrawals at some later time, but he did not appear to be starting on them yet." In the light of this testimony, we cannot hold that the trial court erred in disagreeing with appellant's contention, and admitting the evidence. *People* v. *Martin, supra,* 240 Cal.App.2d at pp. 657-658.

The judgment is affirmed.

Files, P. J., and Jefferson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 22, 1970.