Opinion
 

 ELKINGTON, J.
 

 Defendant Jack Courtney was convicted of the offense of possession of marijuana (Health & Saf. Code, § 11530) following a court trial. Imposition of judgment and sentence was suspended and he was placed on probation. His appeal from the “judgment” will be treated as an appeal from the order granting probation. (See Pen. Code, § 1237, subd. 1.)
 

 Courtney’s first contention is that the narcotic evidence upon which his conviction was based was the product of a Fourth Amendment violation— an illegal “stop and frisk” or at least the threat of such illegal conduct.
 

 George Bruschi was employed as a police officer by Stanford University, a private educational institution. He was not a peace officer as defined by Penal Code sections 7, 817 and 852.1. During midafternoon of December 1, 1968, he was on mobile patrol in a residential area which was the private property of the university. There had been an alarming number of crimes in the area. The officer had had an “extreme” amount of trouble there, including burglaries and indecent exposures. The home of the university’s president was nearby and he had personally been threatened. His office had been fire bombed and gasoline had been found in his garage. There had been other threats of bombings and actual bombings on the university grounds. Another problem was a “run of people stealing women’s underclothing” from clotheslines. The university’s police were advised to “be cautious,”
 

 
 *1188
 
 Officer BruscM observed defendant Courtney walking through the area. He was dressed in unusual garb and when he saw the uniformed officer he turned his head away “kind of like to avoid me.” Courtney appeared to be a stranger to the neighborhood so the officer pulled up to “ascertain if he had business” and identification. Courtney showed a draft card in his name and said he was going to a certain residence. The occupant of the residence to which he said he was going was known by the officer to have a police record. The officer “felt it was necessary” to investigate further so he told Courtney “that I was going to run a check through police radio to further his identification.” The officer testified, “And at that time before I even had a chance— I just had my hand on the receiver of the police radio—he stated he had no driver’s license because it was revoked for hit and run; [that he had been] busted for dope, whatever that meant and also carrying a concealed .38 weapon on his person.” At that point the officer observed an unusual “bulge” under Courtney’s jacket, and felt concern for his safety. He called for assistance over the police radio. Asked what the bulge was, Courtney replied that it was none of the officer’s business because he was not under arrest. Officer Bruschi then reached out toward the bulge “to possibly identify by the feel if it could be a weapon.” But Courtney pulled back; the officer couldn’t “get a good enough feel of the thing” except that it felt firm—“rather hard.” At one time Courtney pulled out the object briefly and said, “Here it is” and quickly replaced it in his pocket. The object was a bag but its contents could not be seen.
 

 In the meantime another officer arrived and a crowd of 18 to 20 people had gathered. Further inquiry as to the nature of the bulge was futile, Courtney insisting, “he was not under arrest, and he did not have to reveal what was in his pocket.” Since other officers had had trouble with crowds while making “investigations on the campus,” Officer Bruschi told Courtney he “was going to hold him for further investigation because there was a crowd gathering on the corner. For both our welfare—”; he felt “it was common sense to get us both off the street.” He further testified: “I told him that I would have to transport him to the Stanford Police Station for further interrogation because there was a crowd gathering, and I felt it wasn’t common sense to stay out there at that intersection any longer than we had already been.”
 

 Officer Sanguinetti who had responded to the radio call testified: “I arrived there, and I got out of my vehicle, and Officer Bruschi came to me and said, T have a problem here that I’d like you to stand by with for a few minutes.’ I said, ‘All right.’ I said, ‘What seems to be the trouble?’ He said, ‘Well, this fellow has got something concealed under his coat.’ I stated, ‘Did you ask him what it was?’ And he said, ‘Yes, but he won’t tell me.’ And I
 
 *1189
 
 said—well, I believed I addressed the defendant then—I said, ‘Son, what do you have under your coat?5 And he said, ‘You will have to arrest me before I show you. . . .’ I was standing behind the defendant off to the side where I could watch him because we thought he had a dangerous weapon or something on him, which Officer Bruschi said that he told him that he had been in trouble before. And also hit run with something to do with narcotics. And so with this bulge under this pea coat, we presumed it could be possibly a dangerous weapon. . . . We had to keep watching him, make sure he wasn’t going to produce a weapon. , . . [W]e finally decided we weren’t getting anywhere with the young fellow; so Officer Bruschi said, ‘We are going to have to take you to the Stanford Police Department and continue this,’ because there was a crowd of people gathering, and on Stanford a crowd of people can sometimes be hostile to police; let’s face it. . .
 

 Both officers testified that Courtney was not under arrest at this point.
 

 Upon being told that the investigation would be continued at the university’s police station, Courtney pulled the bag from his pocket, handed it to the officers, and exclaimed: “ ‘Here it is. Six lids of marijuana.’ ” Courtney was then placed under arrest for possession of marijuana. He effectively confirmed the officer’s testimony, stating that when he was about to be taken to the station “I voluntarily just gave it to them.”
 

 No contention is made by the People on this appeal that until Courtney finally handed the “bag” to the officer, stating it contained marijuana, there was reasonable cause for his arrest. And there would seem to be no question but that the object was produced as a direct result of the officer’s statement that they would have to “continue this”'at the university police station. The question before us then is whether the police conduct up to that point was within their “legitimate investigative sphere.” (See
 
 Terry
 
 v.
 
 Ohio, 392
 
 U.S. 1, 13 [20 L.Ed.2d 889, 901, 88 S.Ct. 1868].)
 

 It is now established law “that circumstances short of probable cause to make an arrest may still justify an officer’s stopping pedestrians or motorists on the streets for questioning.”
 
 (People
 
 v.
 
 Mickelson,
 
 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658]; see also
 
 Terry
 
 v.
 
 Ohio, supra,
 
 392 U.S. 1, 22 [20 L.Ed.2d 889, 906];
 
 People
 
 v.
 
 One 1960 Cadillac Coupe,
 
 62 Cal.2d 92, 96 [41 Cal.Rptr. 290, 396 P.2d 706].) “While the circumstances which justify temporary detention may be bewilderingly diverse”
 
 (People
 
 v.
 
 Manis,
 
 268 Cal.App.2d 653, 659 [74 Cal.Rptr. 423]), such a detention is proper when the circumstances are such as would indicate to a reasonable police officer that such a course is necessary to the proper discharge of his duty.
 
 (People
 
 v.
 
 One 1960 Cadillac Coupe, supra,
 
 pp. 95-96;
 
 People
 
 v.
 
 Manis, supra,
 
 p. 659.) “ ‘The rationale of all these decisions is that an officer of the law, employed to maintain the peace and to prevent crime, as well as
 
 *1190
 
 to apprehend criminals after the fact, has both the right and the duty to make reasonable investigation of all suspicious activities even though the nature thereof may fall short of grounds sufficient to justify an arrest or a search of the persons or the effects of the suspects. Experienced police officers naturally develop an ability to perceive the unusual and suspicious which is of enormous value in the difficult task of protecting the security and safety of law-abiding citizens. The benefit thereof should not be lost because the cold record before a reviewing court does not contain all the particularized perceptions which may have been so meaningful at the scene.”
 
 (People
 
 v.
 
 Bryant,
 
 267 Cal.App.2d 906, 909 [73 Cal.Rptr. 505];
 
 People
 
 v.
 
 Cowman,
 
 223 Cal.App.2d 109,117 [35 Cal.Rptr. 528].)
 

 Here, Officer Bruschi, patrolling a private university residential area that had been the scene of bombings, threats of further bombing, and other violence and crime, observed an oddly dressed person who was a stranger to the neighborhood. Upon seeing the officer the stranger turned his head as if to avoid a confrontation. The officer’s decision to talk to the individual and investigate further was clearly in the proper discharge of his duty.
 

 Because of the stranger’s paucity of identification and his statement that he was headed for the home of one known to have a police record, the officer’s decision to detain him while he ran a radio check was proper. (See
 
 People
 
 v.
 
 Bloom,
 
 270 Cal.App.2d 731, 735 [76 Cal.Rptr. 137];
 
 People
 
 v.
 
 McVey,
 
 243 Cal.App.2d 215, 217 [52 Cal.Rptr. 269].) This action drew the unsolicited response from Courtney that he had a hit-run conviction and had been arrested for narcotics and carrying a concealed .38 caliber firearm. Furthermore, at this point a suspicious bulge was observed in Courtney’s jacket. If not before, the officer then had good reason to consider his own personal safety. He was permitted by law to search Courtney for weapons.
 
 Terry
 
 v.
 
 Ohio, supra,
 
 392 U.S. 1, 26 [20 L.Ed.2d 889, 909], states: “The protective search for weapons, on the other hand, constitutes a brief, though far from inconsiderable, intrusion upon the sanctity of the person. It does not follow that because an officer may lawfully arrest a person only when he is apprised of facts sufficient to warrant a belief that the person has committed or is committing a crime, the officer is equally unjustified, absent that kind of evidence, in making any intrusions short of an arrest. Moreover, a perfectly reasonable apprehension of danger may arise long before the officer is possessed of adequate information to justify taking a person into custody for the purpose of prosecuting him for a crime.” (See also
 
 People
 
 v.
 
 Mickelson, supra,
 
 59 Cal.2d 448, 450-451.)
 

 In an effort to make the weapon search the officer received no cooperation from Courtney. When a physical probe of the suspicious object was made he drew back making it physically impossible to “get a good enough feel of the
 
 *1191
 
 thing.” The officer did conclude, however, that the object, whatever it was, was “firm” or “hard.” In the meantime a large and apparently hostile crowd had gathered.
 

 The issue seems to narrow to whether an adjournment of the investigation and weapon search to the university police station would have been unreasonable and therefore violative of Fourth Amendment standards. If so, then any evidence resulting from a threat to do so would be constitutionally inadmissible. (See
 
 Badillo
 
 v.
 
 Superior Court,
 
 46 Cal.2d 269 [294 P.2d 23];
 
 Gascon
 
 v.
 
 Superior Court,
 
 169 Cal.App.2d 356, 358 [337 P.2d. 201].)
 

 No exact formula exists for determining reasonableness; each case must be decided on the facts and circumstances presented to the officers at the time they were required to act.
 
 (People
 
 v.
 
 Ross,
 
 67 Cal.2d 64, 69-70 [60 Cal.Rptr. 254, 429 P.2d 606];
 
 People
 
 v.
 
 Ingle,
 
 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577].)
 

 We note that an otherwise permissible detention of a person for investigation is clearly not restricted to the precise point of'accostation. It is proper in such a case for the police to require one to step out of an automobile
 
 (People
 
 v.
 
 Martin,
 
 46 Cal.2d 106, 108 [293 P.2d 52];
 
 People
 
 v.
 
 Superior Court,
 
 267 Cal.App.2d 363, 365 [72 Cal.Rptr. 868];
 
 People v. Heard,
 
 266 Cal.App.2d 747, 751 [72 Cal.Rptr. 374]), or to “step back to the police vehicle”
 
 (People
 
 v.
 
 McVey, supra,
 
 243 Cal.App.2d 215, 217). It is common and, so far as we know, accepted practice to continue questioning of a suspect in a nearby police car. (See
 
 People
 
 v.
 
 McVey, supra,
 
 p. 217.) And it has been held not
 
 per se
 
 unreasonable to take a person under investigation “to the police station ... for further investigation.”
 
 (People
 
 v.
 
 Fry,
 
 271 Cal.App.2d 350, 355 [76 Cal.Rptr. 718].)
 

 A recapitulation of the totality of “facts and circumstances” here presented to the officers is helpful. They observed a person in a private (university) community who apparently had no business there. The area had been the scene of much crime and violence including bombing and threats of bombing. Without constitutional infringement they learned that the person had a police record for “hit and run” driving, narcotics violation, and carrying a concealed .38 caliber weapon. They were refused an opportunity to determine the contents of a bag which caused a bulge in the suspect’s clothing. Under the circumstances the police could reasonably suspect that it contained a weapon, or even explosives which today may take a wide variety of shapes and consistencies. Further investigation would obviously require some force which if used on the street would probably antagonize a growing and apparently hostile crowd of bystanders.
 

 
 *1192
 
 Certainly there was no Fourth Amendment compulsion on the police to choose between an on-the-spot continuation of their investigation at the probable cost of their own safety,
 
 or
 
 abandoning the investigation, thus allowing the suspect to continue his mission, whatever it might be, without further inquiry. We recognize that it is only in a rare case where, absent probable cause for arrest, the removal of a suspect to a police station for further investigation is constitutionally permissible. Nevertheless we are constrained. to hold, and we do hold, that under the totality of facts and circumstances here known to the police, it was reasonable for them to remove Courtney to the university police station for that purpose. The Fourth Amendment test of reasonableness has been met.
 

 We find it unnecessary to a disposition of this appeal to pass upon Courtney’s remaining argument that the conduct of the private Stanford University Police Department was “state action” within the scope of the Fourth and Fourteenth Amendments. Our decision is based upon the assumption,
 
 arguendo,
 
 that it was such “state action.”
 

 The order granting probation, described as a “judgment” in the notice of appeal, is affirmed.
 

 Molinari, P. J., and Sims, J., concurred.
 

 Appellant’s petition for a hearing by the Supreme Court was denied December 14, 1970. Peters, J., was of the opinion that the petition should be granted.