[Crim. No. 19985. Second Dist., Div. Two. Dec. 7, 1971.]

THE PEOPLE, Plaintiff and Appellant, v.
JOHN GILBERT DOMINGUEZ, Defendant and Respondent.

COUNSEL

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, Joseph P. Busch, Jr., District Attorney, Harry Wood and Robert J. Lord, Deputy District Attorneys, for Plaintiff and Appellant.

Richard S. Buckley, Public Defender, James L. McCormick, Charles R. English and Harry W. Brainard, Deputy Public Defenders, for Defendant and Respondent.

## OPINION

**ROTH, P. J.**—The People appeal from an order setting aside the information (Pen. Code, § 1238, subd. 1) charging defendant with the grand theft of an automobile and the unlawful taking of the same vehicle. (Pen. Code, § 487 and Veh. Code, § 10851, respectively.)

Sometime during the early evening hours of October 21, 1970, a vehicle belonging to Mr. Suk K. Lee was stolen from its parking place on 36th Street in Los Angeles. Apparently shortly after the theft, Officer Alvarez observed Mr. Lee's vehicle with four passengers, all appearing to be Negroes, proceeding at about 25 miles per hour in a direction opposite to that of the (police) vehicle in which he was driving. Alvarez made a U-turn and followed the vehicle; his suspicion had evidently been already aroused[1] for he checked the license number of the vehicle through the Department of Motor Vehicles. As a result of that check, Alvarez learned that the vehicle was registered to Mr. Lee and that it was *not* listed as stolen. The ensuing events are best described in Alvarez' testimony at the preliminary hearing:

"Q. Why did you stop that vehicle? A. There were four, appeared to be four persons in the vehicle, all appearing to be Negros, and didn't seem to fit the name of the owner that came back from Communications. Q. What did you find out, what did you find or what happened after you stopped the vehicle? A. We asked the driver, the defendant Dominguez for identification, he had none. We asked him who the owner of the vehicle was, he stated that a friend of his named Charles Jones, who lived in Downey, had given him permission to drive the vehicle. Q. What else—what did you do then? A. We checked the registration on the wheel and it was registered to a Suk K. Lee. These conflicting statements from the defendant led us to believe—and, also the wind wing, right wind wing was broken on the vehicle, led us to believe that this wasn't Mr. Dominguez's vehicle. We asked him to go to the station with us. On the way to the station my partner, Officer McNamarra, read from LAPD form 15.5 [*sic*], advising Mr. Dominguez of his constitutional rights."

It was after the *Miranda* admonition referred to that the defendant waived his rights and then confessed to the crime in the words "I stole the car in the vicinity of SC campus." The warning, as well as the immediately ensuing confession, was administered and took place in the police vehicle which was en route to the station.

---

[1]There is a suggestion in the record, made in the form of a question by the deputy public defender, that Alvarez followed the vehicle because its occupants turned to look at him. Of course, a question is not evidence and no reliance may be placed thereon in terms of the disposition of this appeal.

While circumstances short of probable cause for making an arrest may warrant temporary detention for purposes of investigation (*Terry* v. *Ohio,* 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868]), a detention based on a "mere hunch" is unlawful: " 'There must be a "rational" suspicion by the peace officer that some activity out of the ordinary is or has taken place . . . some indication to connect the person under suspicion with the unusual activity . . . [and] some suggestion that the activity is related to crime.' " (*Irwin* v. *Superior Court,* 1 Cal.3d 423, 427 [82 Cal. Rptr. 484, 462 P.2d 12].)

At bench, the stop and detention were made on the "hunch," and nothing more, that the vehicle was stolen—a hunch which was not abandoned even after the vehicle was found not to be listed as stolen. The fact, such as it was, that defendant did not match what the officer thought Mr. Lee, the registered owner, should look like, namely Oriental, provides no basis for a detention and is in and of itself questionable as the superior court stated ". . . if the Court . . . takes a look at Mr. Dominguez, it is obvious to me that he is not a Negro. My first impression is that he is of Mexican descent, *and might even be Oriental to some degree."* (Italics added.)

The People contend that ". . . it was simple [*sic*] good police work for him [Alvarez] to be suspicious of it when it contained four Negroes *but no Orientals."* (Italics in original). Good police work, however, includes obedience to the law, as well as an officer's sixth sense.

The record demonstrates that the detention and ensuing investigation did not net the requisite probable cause for the arrest (Pen. Code, § 836) which followed. Thus, prior to the detention there had been no unusual activity in the car, it had been proceeding lawfully, there were no reports of fresh crimes in the vicinity, the occupants of the car were unknown to Alvarez, the vehicle was not listed as stolen, and the area, at least as far as the record reveals, was not a "high crime" neighborhood.[2] The only items uncovered by the unlawful detention were that defendant stated that the vehicle's owner was one Charles Jones and that the wind wing of the car was broken.

While a discrepancy between a motorist's explanation and certain facts known to the officer may justify and indeed mandate investigation, the legal bases for *police inquiry* are considerably less exacting than placing an individual under arrest, as was done here, and transporting him to jail. Even assuming that the detention was lawful—all investigation was aban-

---

[2]These factors, when present, have been held to justify temporary detention. (See *People* v. *Villafuerte,* 275 Cal.App.2d 531, 535, fn. 3 [80 Cal.Rptr. 279].)

doned after defendant's statement about Charles Jones: no questions were addressed to the passengers; no demand was made for a driver's license;[3] no second check was made as to the vehicle's status—which, made after the confession, produced the information that the vehicle had been stolen; and, as appears from the record, no questions of any kind were asked of the defendant such as might properly have explored—*investigated*—the discrepancy between the claimed and registered owner of the car.

The arrest, as the detention, was unlawful.

The remaining issue is whether the confession is rendered inadmissible by the unlawful arrest which preceded it. (*People* v. *Johnson,* 70 Cal.2d 541, 552 [75 Cal.Rptr. 401, 450 P.2d 865].)

The recognized distinction between a confession obtained after confrontation with evidence secured by an unlawful search and a confession made after an unlawful arrest (*People* v. *Johnson, supra,* at p. 552) must be made in the case at bench. The inquiry must be whether the confession was voluntary, notwithstanding the fact that defendant was (illegally) under arrest at the time he made the confession. Unlike an instance where a confession is produced by a confrontation with illegally obtained evidence, at bench the ". . . custodial environment is merely one factor (though a significant one) to be considered in determining whether the confession is inadmissible." (*People* v. *Johnson, supra,* p. 552.)

The cardinal and dispositive issue in a case such as this where a confession supplies every element of the charged crime is the issue of voluntariness. It is true that in the recent case of *People* v. *Williams,* 8 Cal.App.3d 44 [86 Cal.Rptr. 821], the identical issue was considered in terms of *attenuating the taint of the illegal arrest.* However, as the extensive footnote number 4 in *People* v. *Johnson, supra,* at page 552 shows, the real thrust of the inquiry is *voluntariness* and the question of "attenuating the taint" of the illegal arrest is relevant only insofar as it is subsidiary or necessarily included in the question whether the confession was voluntarily made. The importance of subordinating attenuation to the main line of inquiry appears from the fact, recently recognized in *People* v. *Magana,* 272 Cal.App.2d 388, 390 [77 Cal.Rptr. 436], that the *Miranda* warning itself may operate to render the confession voluntary and thus admissible.

---

[3]Officer Alvarez testified that the defendant had no "identification." Of course, only a driver's *license* is required to be in the possession of a motorist (Veh. Code, § 12951). Failure to have such a license in one's possession while driving a motor vehicle upon a highway may result in an arrest (Veh. Code, § 40302) or in being issued a citation (Veh. Code, § 40500 et seq.) however, at bench the officer testified unequivocally that the detention and arrest had been effected on the ground that the vehicle was suspected to have been stolen.

In *Magana,* a concededly illegal arrest was followed by a *Miranda* warning, and while still at the scene of the arrest, by a confession. Justice Thompson, writing for the Court of Appeal, emphasized that the effects of the illegal detention was dissipated by the *Miranda* warning and found from the "spontaneous nature" of the suspect's statement that the trial court had not erred in admitting it into evidence. (272 Cal.App.2d at p. 390.)

At bench, while the superior court addressed itself to the question of the legality of the detention and resolved it, as we have seen, correctly, the record of the hearing on the motion under Penal Code section 995 shows that the question of the admissibility of the confession, which, of course, supplies all the necessary evidence for a conviction provided it is admissible, was not resolved or considered.

Although the record as presently constituted contains the permissible inference that the confession was voluntary, we express no opinion concerning this issue which is properly one for the finder of fact. (*People v. Williams, supra,* 8 Cal.App.3d 44, 50.)

The order is reversed.

Fleming, J., concurred.

**HERNDON, J.**—I concur in the judgment of reversal. At the outset it appears to me that the order setting aside the information in this case should be reversed because the evidence that appellant had confessed his guilt of stealing the automobile was offered and received at the preliminary hearing without objection or motion to strike. It is well settled that unless an objection is urged at the preliminary hearing it may not be asserted on a motion under Penal Code section 995. (*Robison* v. *Superior Court,* 49 Cal.2d 186, 197 [316 P.2d 1]; *People* v. *Schultz,* 263 Cal.App.2d 110, 113 [69 Cal.Rptr. 293]; *People* v. *McFarren,* 155 Cal.App.2d 383, 384 [317 P.2d 998].) In my view, the application of the foregoing rule is not avoided by the fact that at the conclusion of the hearing, and after both sides had rested, defendant moved "to dismiss the charges on the basis that the original stop was illegal."

However, I dissent from the holding of the majority that the detention of appellant for the purpose of routine interrogation was not justified by the observations of the officer under the attendant circumstances. As we pointed out in *People* v. *Manis,* 268 Cal.App.2d 653, 659 [74 Cal.Rptr. 423], "[t]he validity of any particular temporary detention involves a determination of fact." The magistrate who presided at the preliminary hearing in this case decided that question of fact in the affirmative; and that

determination was binding upon the superior court sitting as a court of review, as it does in hearing a motion under section 995, there being substantial evidence to support the finding.

In *People* v. *Cowman,* 223 Cal.App.2d 109 [35 Cal.Rptr. 528], a case involving a similar factual situation, we discussed the decision of the United States Supreme Court in *Rios* v. *United States,* 364 U.S. 253 [4 L.Ed.2d 1688, 80 S.Ct. 1431], and a number of other decisions of the state and federal courts, wherein the actions of police officers in detaining suspects for purposes of investigation were held proper notwithstanding that the attendant circumstances were not sufficiently suspicious to provide probable cause to arrest. In the light of this review we commented as follows at pages 117-118: "The rationale of all these decisions is that an officer of the law, employed to maintain the peace and to prevent crime, as well as to apprehend criminals after the fact, has both the right and the duty to make reasonable investigation of all suspicious activities even though the nature . thereof may fall short of grounds sufficient to justify an arrest or a search of the persons or the effects of the suspects. Experienced police officers naturally develop an ability to perceive the unusual and suspicious which is of enormous value in the difficult task of protecting the security and safety of law-abiding citizens. The benefit thereof should not be lost because the cold record before a reviewing court does not contain all the particularized perceptions which may have been so meaningful at the scene."

In *People* v. *Courtney,* 11 Cal.App.3d 1185, 1189 [90 Cal.Rptr. 370], the law is stated as follows: "It is now established law 'that circumstances short of probable cause to make an arrest may still justify an officer's stopping pedestrians or motorists on the streets for questioning.' (*People* v. *Mickelson,* 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658]; see also *Terry* v. *Ohio, supra,* 392 U.S. 1, 22 [20 L.Ed.2d 889, 906]; *People* v. *One 1960 Cadillac Coupe,* 62 Cal.2d 92, 96 [41 Cal.Rptr. 290, 396 P.2d 706].) 'While the circumstances which justify temporary detention may be bewilderingly diverse' (*People* v. *Manis,* 268 Cal.App.2d 653, 659 [74 Cal. Rptr. 423]), such a detention is proper when the circumstances are such as would indicate to a reasonable police officer that such a course is necessary to the proper discharge of his duty. (*People* v. *One 1960 Cadillac Coupe, supra,* pp. 95-96; *People* v. *Manis, supra,* p. 659.)"

In *People* v. *Martinez,* 6 Cal.App.3d 373, at pages 376-377 [86 Cal. Rptr. 49], the court lists a substantial number of different factual situations which, in recent decisions of the Supreme Court and the Court of Appeal of this state, have been held sufficient to justify "routine investigation." A comparison of those factual situations with that presented in the case at

bench leads to the conclusion that the detention here in question was reasonable and proper.

The fact that the record owner of the automobile stolen by appellant in this case was a man whose name, Suk K. Lee, obviously provided an exceedingly strong indication that he was of Oriental extraction, and the fact that the vehicle was occupied by four persons, none of whom was Oriental and all of whom appeared to the officer to be Negroes, combined to cause the officer to suspect the vehicle might have been stolen.

In my opinion these facts were sufficient to create in the mind of a reasonable person a "rational suspicion" that some activity out of the ordinary might have taken place—an indication of an unusual combination of circumstances suggesting that the driver of the vehicle might have stolen it. The observation is made in the majority opinion that "the area, at least as far as the record reveals, was not a 'high crime' neighborhood." I would suggest that it is now a proper subject of judicial notice, in view of the alarming increase in the incidence of such crimes as robbery, burglary and auto theft in the City of Los Angeles, that all parts of the city, and not merely the southeast district in which the instant detention occurred, are now "high crime" areas.

Quite obviously, the truth that the suspicions of Officer Alvarez were well founded was promptly and conclusively demonstrated by appellant's voluntary confession. However, it is not necessary to resort to the benefit of hindsight to justify the actions of the officer in this case.

It is beyond reasonable dispute that probable cause for appellant's arrest was provided by the discovery of the broken wind wing, combined with appellant's inability to produce any identification, the observation of the registration card on the steering post indicating that the vehicle was owned by one Suk K. Lee and the classic but questionable explanation that the car had been loaned to the driver by a friend named Jones.

In view of statistics indicating that currently more than two-thirds of the serious crimes against person and property committed in this area are never solved and their perpetrators never apprehended, I submit that this is no suitable time to restrict law enforcement officers in the performance of their duties in detecting and apprehending criminals.

Respondent's petition for a hearing by the Supreme Court was denied February 3, 1972.