[L. A. No. 29665. In Bank. Dec. 17, 1969.]

DENNIS EUGENE IRWIN, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Richard S. Buckley, Public Defender, Stephen C. Marpet, Joel S. Peck, and James L. McCormick, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Evelle J. Younger, District Attorney, Harry Wood and Donald J. Kaplan, Deputy District Attorneys, for Real Party in Interest.

## OPINION

**PETERS, J.**—Dennis Eugene Irwin petitions for a writ of mandate or prohibition to order the Superior Court of Los Angeles County to suppress evidence of narcotics.

Irwin was charged by information with possession of marijuana for sale. (Health & Saf. Code, § 11530.5.) Motions to dismiss the information (Pen. Code, § 995) and to suppress the evidence (Pen. Code, § 1538.5) were denied.

Los Angeles Police Officers Tusan and Simmons were sent to the Los Angeles International Airport on July 15, 1968, to investigate a telephoned

report from a United Airlines employee that another employee had discovered what appeared to be marijuana in a passenger's baggage. When Ronald Cauwels[1] came to the storage room, about 11:50 p.m., to claim his package, he was arrested. Officer Simmons observed the number on the United Airlines baggage tag attached to Cauwels' package. After Cauwels was arrested, Officer Simmons left the storage room in the baggage area to see if "Cauwels was accompanied by anyone else, . . ." He observed Irwin "just standing" in the lobby about 15 feet outside a glass door separating the baggage area from the lobby, which leads to the sidewalk. Irwin was standing next to three pieces of baggage, consisting of two pieces of luggage and a paper bag. Attached to one piece of luggage was a United Airlines tag bearing the next sequential number to the tag on Cauwels' cardboard box.

Officer Simmons asked or told Irwin to accompany him to the storage room in the baggage claim area. In response to Officer Simmons' question, Irwin said he had no baggage. After leaving Irwin where Officer Tusan could "keep an eye on him," Officer Simmons went back to the lobby "to examine the baggage." He picked up the paper bag and detected an odor similar to the odor which came from Cauwels' baggage. He then took the bag and the two pieces of luggage back to the storage room, where he examined the bag, and found clothing, an envelope with Irwin's name, and "six paper-wrapped packages . . . each containing a green, plant material." Officer Simmons then arrested Irwin.[2]

In *People* v. *One 1960 Cadillac Coupe,* 62 Cal.2d 92, 94-96 [41 Cal. Rptr. 290, 396 P.2d 706], we held that, although "a police officer . . . may detain and question a person when the circumstances are such as would indicate to a reasonable man in a like position that such a course is necessary to the proper discharge of [his] duties," the circumstances must be such as to distinguish the activity of the detained person from that of any other citizen and must be based on an objective perception of events rather than the subjective feelings of the detaining officers. (See also, *People* v. *Moore,* 69 Cal.2d 674, 683 [72 Cal.Rptr. 800, 446 P.2d 800].)

"[T]he police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those

---

[1]Cauwels is not a party to this petition, and the lawfulness of his arrest is not at issue.

[2]The luggage with the numbered tag in fact belonged to a third person. The validity of the detention or arrest and search, however, turns on the apparent circumstances at the time. (E.g., *People* v. *Ingle,* 53 Cal.2d 407, 414 [2 Cal.Rptr. 14, 348 P.2d 577].)

charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in the light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard . . . ." (*Terry* v. *Ohio* (1968) 392 U.S. 1, 21 [20 L.Ed.2d 889, 906, 88 S.Ct. 1868], footnotes omitted.)

Thus, a detention based on "mere hunch" is unlawful (*People* v. *Nailor,* 240 Cal.App.2d 489, 493 [49 Cal.Rptr. 616]), even though the officer may have acted in good faith (*Terry* v. *Ohio, supra,* 392 U.S. 1, 22 [20 L.Ed.2d 889, 906]). There must be a "rational" suspicion by the peace officer that some activity out. of the ordinary is or has taken place . . . some indication to connect the person under suspicion with the unusual activity. . . . [and] some suggestion that the activity is related to crime." (*People* v. *Henze,* 253 Cal.App.2d 986, 988 [61 Cal.Rptr. 545].)

Where the events are as consistent with innocent activity as with criminal activity, a detention based on those events is unlawful. (*People* v. *Moore, supra,* 69 Cal.2d 674, 683; *People* v. *One 1960 Cadillac Coupe, supra,* 62 Cal.2d 92, 96; *People* v. *Escollias,* 264 Cal.App.2d 16, 19-20 [70 Cal.Rptr. 65]; *People* v. *Hunt,* 250 Cal.App.2d 311, 314 [58 Cal.Rptr. 385].)

Although the discovery that Cauwels had shipped a box of marijuana showed criminal activity, there is nothing unusual in the activity of Irwin who was standing close to baggage near the United Airlines baggage area in the Los Angeles International Airport. The basis of Officer Simmons' initial decision to see if Cauwels was accompanied by anyone else does not appear in the record; we can assume only that he had a "hunch" that marijuana shippers might be traveling in pairs.

Just as we found in *Cadillac* that there was nothing in the suspect's aimless walk on a public sidewalk to distinguish him from "any other harried citizen" (62 Cal.2d at p. 96), and in *Moore* that there was nothing in the suspect's making a telephone call to distinguish him from "any other citizen" (69 Cal.2d at p. 683), so there is nothing in Irwin's activity to distinguish him from any other embarking or debarking passenger at the Los Angeles airport.

Nor does the circumstance that one of the pieces of luggage near where Irwin was standing contained the next-numbered tag to Cauwels' baggage tag rationally suggest criminal activity by Irwin, or provide a rational connection to Cauwels' criminal activity. The most that can be said of this circumstance, in isolation, is that Irwin was the next passenger in line at the baggage check-in counter. (Cf., *People* v. *One 1960 Cadillac Coupe, supra,* 62 Cal.2d 92, 94, where the suspect had parked his car "across the sidewalk from the point where [a narcotics] kit had been discovered.")

Even assuming that it could be inferred that Irwin stood behind Cauwels

in line and further inferred that Irwin knew Cauwels, the next inference that Irwin was involved in Cauwels' criminal activity is based on "nothing more substantial than inarticulate hunches, . . ." (*Terry* v. *Ohio, supra,* 392 U.S. 1, 22 [20 L.Ed.2d 889, 906].) There is no evidence that Officer Simmons had any additional information about Cauwels or Irwin, or had any tip that persons traveling in pairs were shipping marijuana. (See *People* v. *Henze, supra,* 253 Cal.App.2d 986, 989-990.)

Since there was no reasonable basis for detaining Irwin, the evidence seized in connection with that detention must be excluded. (*People* v. *Moore, supra,* 69 Cal.2d 674, 683; *People* v. *One 1960 Cadillac Coupe, supra,* 62 Cal.2d 92, 95, 97.)

■ Moreover, even if it be assumed *arguendo* that the circumstances justified a temporary detention of Irwin, such circumstances do not justify the type of search herein involved as incident to the detention. ■ At most, a police officer, in detaining a citizen in "circumstances short of probable cause," may make a "superficial search" of the suspect "for concealed weapons." (*People* v. *Mickelson,* 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658]; *Sibron* v. *New York* (1968) 392 U.S. 40, 65 [20 L.Ed.2d 917, 936, 88 S.Ct. 1889]; *Terry* v. *Ohio, supra,* 392 U.S. 1, 29 [20 L.Ed.2d 889, 910].)

■ A superficial search of a suspect for purposes other than locating concealed weapons is unlawful (*Sibron* v. *New York, supra,* 392 U.S. 40, 62, 65 [20 L.Ed.2d 917, 934, 936]), and the search of a suspect's belongings where that person has no access to any weapons that might be concealed in such belongings is equally unlawful (*People* v. *Mickelson, supra,* 59 Cal.2d 448, 454).

■ In this case, Irwin was with a police officer in the baggage area when Officer Simmons returned to the lobby, 15 feet from the door leading to the baggage area, to seize and search the luggage and paper bag. Clearly, the seizure and search of the bag did not constitute a "superficial search for concealed weapons." (*People* v. *Mickelson, supra,* 59 Cal.2d 448, 450.) By the officer's own testimony, the sole purpose of the search was to discover contraband. This is precisely the type of search incident to a detention on suspicion that the Supreme Court found unlawful in *Sibron* v. *New York, supra,* 392 U.S. 40, 62 [20 L.Ed.2d 917, 934]. ■ An unlawful search "cannot be justified by what it turned up." (*People* v. *Mickelson, supra,* 59 Cal.2d 448, 454.) The evidence must be excluded.

Respondent urges that it was reasonable for Officer Simmons to remove the baggage because Irwin had disclaimed ownership and the baggage might have been lost. The "lost" baggage was standing in the airport lobby 15 feet from the baggage area. So far as the officer was aware, the baggage

was unattended for only a few moments. To argue that the officer could have lawfully seized such baggage would mean that officers could lawfully seize every piece of momentarily unattended baggage in the entire Los Angeles airport. The contention is absurd.

 Respondent's final contention is that the search of the paper bag can be justified as incident to the arrest of Cauwels. "The right to make a contemporaneous search without a warrant upon lawful arrest extends to things under the accused's immediate control and, to an extent depending upon the circumstances, to the place where he is arrested." (*People* v. *Burke,* 61 Cal.2d 575, 579-580 [39 Cal.Rptr. 531, 394 P.2d 67].) Regardless of how "immediate" and "place" are defined, it should be apparent that there must be some showing of "control." (See, e.g., *People* v. *Cruz,* 61 Cal.2d 861, 866 [40 Cal.Rptr. 841, 395 P.2d 889].) That is, *at a minimum* there must be some connection between the defendant and the object to be seized.

 In this case, the paper bag was not under Cauwels' control. There is no evidence to link Cauwels with the paper bag, other than the fact that one of the suitcases which were next to the paper bag had a baggage tag bearing the next-sequential number to the number on Cauwels' baggage. There was no identifying tag on the paper bag itself. Without reaching the question whether, if the paper bag without question belonged to Cauwels a search would have been justified, it seems clear that it could not be reasonably concluded that Cauwels owned, possessed, controlled, or in any way was connected to the paper bag. The search was not incident to the arrest of Cauwels.

The alternative writ of prohibition heretofore issued is discharged. Let a peremptory writ of mandate issue directing the respondent superior court to suppress the evidence consisting of the paper bag and its contents.

Traynor, C. J., Tobriner, J., and Sullivan, J., concurred.

**MOSK, J.**—I dissent.

At the airport, the petitioner denied to Officer Simmons that he had any luggage. If the bags lying at petitioner's feet had previously been in his possession, at the moment of his disclaimer for all practical and legal purposes their status was changed to that of abandoned property. The rule has always been, as repeated in *Martin* v. *Cassidy* (1957) 149 Cal.App.2d 106, 110 [307 P.2d 981], that: "Abandonment is defined as the 'voluntary giving up of a thing by the owner because he no longer desires to possess it or to assert any right or dominion over it and is entirely indifferent as to what may become of it or as to who may thereafter possess it.' "

I am aware of no restriction upon the right, perhaps the duty, of law enforcement officers to take and to inspect personal property abandoned in a public place. (Civ. Code, § 1872.)

When externally examined, the property, a paper bag, gave forth the unmistakable aroma of marijuana (see dissent in *People* v. *Marshall* (1968) 69 Cal.2d 51, 62 [69 Cal.Rptr. 585, 442 P.2d 665]) and upon being opened revealed marijuana and other personal property, including an envelope with petitioner's name thereon and an airplane ticket for transportation for defendant from Denver to Los Angeles. These circumstances justified a reasonable inference that petitioner, despite his disclaimer, did in fact have constructive custody of the bag containing contraband, and thus warranted placing petitioner under arrest.

The circumstantial prima facie case presented by the prosecution suggests no reason justifying denial of an opportunity for petitioner to explain at trial, if he chooses to do so, how his airplane ticket came to be in a bag containing marijuana. The superior court denied the motion to suppress evidence, and the Court of Appeal denied an extraordinary writ. Issuance by this court of a peremptory writ directing the superior court to suppress the paper bag and its marijuana contents is unjustified.

McComb, J., and Burke, J., concurred.

The petition of the real party in interest for a rehearing was denied January 14, 1970. McComb, J., Mosk, J., and Burke, J., were of the opinion that the petition should be granted.