[Crim. No. 9799. First Dist., Div. One. Dec. 20, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES FRANCIS GRAVATT, Defendant and Appellant.

## COUNSEL

Ann Warner, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Robert R. Granucci and H. F. Wilkinson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ELKINGTON, J.** — Defendant Gravatt appeals from a judgment based upon jury verdicts finding him guilty of possession of a concealable firearm by an ex-convict (Pen. Code, § 12021), and receiving stolen property (Pen. Code, § 496).

We state the relevant evidence as it tends to support the jury verdicts and the judgment.

Around 10 o'clock one morning a police officer, driving in an area with a high crime rate, observed a Cadillac automobile parked in front of the "Little Peyton Place Bar." Its trunk, in which a television set could be seen, was open. Two men were standing next to the trunk talking. The officer continued for a couple of blocks and then made a U-turn and returned. As he drove up the men apparently seeing the officer, shut the trunk and started walking back toward the bar. The officer "hailed them" and asked "whose stuff was in the back of the car." One of the men, Gravatt, responded that the stuff belonged to his brother-in-law. The officer asked Gravatt "if he minded if I looked in the trunk." Gravatt "stated he didn't mind" and then opened the trunk with a key. Inside, in addition to the television set, the officer saw a pistol and a case carrying an antique shotgun. At this point the officer called for a cover unit. While waiting for the other police car the officer asked Gravatt, "Where did you say you got these items?" This time he said "he won them in a crap game last night." Soon after, another officer drove up. The second officer observing the gun and other property which was still in the trunk, asked Gravatt "if he had done time." Gravatt "said he had just got out for armed robbery." Gravatt was then arrested for violation of Penal Code section 12021 after which he was given a *Miranda* warning. The pistol, shotgun and television set, all of which the evidence at the trial disclosed to have been stolen, were then placed in one of the police vehicles.[1]

Gravatt's first contention is that the shouted question, "whose stuff was in the back of the car," was an "illegal detention." The trial court concluded that this police conduct constituted no detention, illegal or otherwise; that Gravatt was "free to take off and go his own way" and did not "otherwise reasonably believe he was in detention."

We need not pass upon the question whether a "detention" in fact oc-■■■■■ ■ Under the Fourth Amendment the police officer's conduct was illegal only if it was "unreasonable." Whether it was unreasonable depends on all the facts and circumstances—the total atmosphere of the case. (*People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577].) ■ While a detention of a citizen by a police officer based on a "mere hunch" is unlawful, if there is a rational *suspicion* that some activity out of the ordinary is taking place, and some *suggestion* that the activity is re-

---

[1]A conflict existed as to whether the property was taken from the trunk before, or after, the police knew Gravatt to be an ex-convict. We must presume that the trial court found the latter to be true. (*People* v. *Williams,* 5 Cal.3d 211, 214 [95 Cal.Rptr. 530, 485 P.2d 1146].)

lated to crime, a detention is permissible. (*Irwin* v. *Superior Court,* 1 Cal.3d 423, 427 [82 Cal.Rptr. 484, 462 P.2d 12]; and see the excellent discussion of police detentions in *People* v. *Manis,* 268 Cal.App.2d 653, 661-662 [74 Cal.Rptr. 423].) ■ And, of course, the degree of restraint involved in a "detention" (here the restraint, if any, was minimal) is an important consideration in determining reasonableness.

■ The activity of the two men took place in a high crime area in front of a bar. The men were looking at and obviously discussing the television set in the trunk. When they saw the officer the trunk was slammed shut and the men walked toward the bar from which they had apparently emerged some time before. There was clearly occasion for a rational *suspicion* that some activity out of the ordinary was taking place and a *suggestion* that it was related to stolen property. Considered as a "detention" or simply as an on-the-scene question by the officer short of detention, the conduct of the officer appears to us to have been reasonable, and thus constitutionally proper.

Nor do we find merit in Gravatt's second contention that "the search of the car's trunk was illegal." ■ Whether his consent to that search was voluntary or in submission to an implied assertion of authority was a question of fact to be determined in the light of all of the circumstances. (*Castaneda* v. *Superior Court,* 59 Cal.2d 439, 442 [30 Cal.Rptr. 1, 380 P.2d 641]; *People* v. *Bustamonte,* 270 Cal.App.2d 648, 652 [76 Cal.Rptr. 17].) ■ The trial court's determination that such a search was voluntary will not be disturbed if it is supported by substantial evidence. (*People* v. *Bilderbach,* 62 Cal.2d 757, 762-763 [44 Cal.Rptr. 313, 401 P.2d 921]; *People* v. *Stark,* 275 Cal.App.2d 712, 715 [80 Cal.Rptr. 307].) Here there was such substantial evidence. ■ And there is no legal requirement that a suspect be told of his right to refuse a request to search an automobile. (*People* v. *Stark, supra,* p. 715.) A failure to do so, however, may be considered in determining whether the consent was in fact freely given; here we must presume that such failure was so considered by the court.

■ The next contention is that in any event the seizure (as distinguished from the search of the trunk) of the pistol, the antique shotgun and its case, and the television set was a Fourth Amendment violation. As we have pointed out the men, who were apparently engaged in an unusual transaction, slammed the car trunk shut upon seeing the officers and then walked back toward the bar. Gravatt gave conflicting accounts as to whose "stuff" was in the trunk. Then the officers learned he was an ex-convict, having "just got out for armed robbery," and furthermore that he was even then engaged in the perpetration of a felony, a violation of Penal Code section

12021. The circumstances would clearly justify a reasonable police officer to conscientiously entertain a strong suspicion that the trunk's contents were stolen (as they had been) and that Gravatt knew that they were stolen. There was accordingly probable cause for Gravatt's arrest for the two offenses of which he was later convicted. (See *People* v. *Terry,* 2 Cal.3d 362, 393 [85 Cal.Rptr. 409, 466 P.2d 961].) As an incident to that arrest it was permissible to seize evidence of the crimes. (*People* v. *Thayer,* 63 Cal.2d 635 [47 Cal.Rptr. 780, 408 P.2d 108].)

■ Finally, Gravatt contends that error occurred in the police failure to advise him of his "*Miranda* rights" before asking if he "had done time," an incriminating element of his Penal Code section 12021 arrest and conviction. The question was asked during the course of the officer's investigation; it was not a "custodial interrogation" after Gravatt had "been taken into custody or deprived of his freedom of action in any significant way." The *Miranda* admonition was therefore not required at the time of the investigative question. (See *People* v. *Arnold,* 66 Cal.2d 438, 448-449 [58 Cal.Rptr. 115, 426 P.2d 515].) As was said in *Miranda* (*Miranda* v. *Arizona,* 384 U.S. 436, 477-478 [16 L.Ed.2d 694, 725-726, 86 S.Ct. 1602, 10 A.L.R.3d 974]): "General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. . . . In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present."

We note that Gravatt, although not urging it to be cause for reversal, argues that the trial judge erred in determining that another judge's decision on the "detention issue" on a Penal Code section 995 motion "need not be litigated and was the law of the case and thus the trial court would not disturb the ruling." It is true that some such comment occurred early in the trial. But the record is clear that the "detention issue" and all Fourth Amendment issues were thereafter considered and ruled upon by the trial judge. As we have indicated, among other things the court then said "there is certainly nothing in the record that I can find that would justify me saying that [the officer] had detained him prior to [the disclosure of Gravatt's robbery record] or that the defendant wasn't free to take off and go his own way . . . ."

The judgment is affirmed.

Molinari, P. J., and Sims, J., concurred.

A petition for a rehearing was denied January 13, 1972, and the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied February 16, 1972.