[Crim. No. 22999. Second Dist., Div. Two. Aug. 27, 1973.]

THE PEOPLE, Plaintiff and Appellant, v.
ERIC FRANKLIN CHAPMAN et al., Defendants and Respondents.

**45**

## COUNSEL

Joseph P. Busch, District Attorney, Harry B. Sondheim and Robert J. Lord, Deputy District Attorneys, for Plaintiff and Appellant.

Richard S. Buckley, Public Defender, Harold E. Shabo, Harry Lippman, Dennis A. Fischer and Martin Stein, Deputy Public Defenders, for Defendants and Respondents.

## OPINION

**ROTH, P. J.**—People appeal from an order dismissing an information (Pen. Code, § 1238, subd. (a)(1) charging respondents Eric Franklin Chapman (Chapman) and Warrenton Gilmore (Gilmore) with a violation of section 11530 of the Health and Safety Code.

On August 4, 1972, one of the two police officers cruising in a police vehicle on Exposition Boulevard, at approximately 2 a.m., observed a 1964 blue Chevrolet with a smashed out window on the driver's side, occupied by two males, parked at the curb on the opposite side of the street. The observing officer, thinking the car might have been stolen, turned the police vehicle around and approached the Chevrolet from the rear. Concurrently a license check was in process with headquarters. As the police vehicle was being brought to a stop, the Chevrolet moved from the curb in the direction in which it was headed but stopped immediately when the red lights of the police vehicle were activated. One of the officers exited the police vehicle, ordered Gilmore who sat on the driver's side and Chapman who was sitting on the passenger side of the Chevrolet out, and directed them toward the police car; both complied forthwith. There is no testimony or suggestion that either respondent was under the influence of alcohol or of any irregularity of gait or appearance or of any furtive or suspicious conduct on the part of either of them nor is there any evidence of a crime neighborhood, reported burglaries or any other criminal activities. No request was made of either respondent for a driver's license or any other identification nor were they asked what they were doing in the car or the neighborhood or where they lived or how the window was broken.

Each respondent was frisked for weapons before any questions were asked. None were found. Gilmore was then asked if the vehicle was his. He answered in the affirmative. He was then asked for its registration and replied according to the officer that he did not have it on his person and he was not sure but he thought that it was in the car and the officer could look. The officer with aid of his flashlight looked for the registration on the steering wheel column; seeing none, he leaned toward the glove compartment, noticed that the window on the passenger side was also smashed out, and observed a plastic bag on the floor of the passenger side of the car. The officer concluded it contained marijuana. Respondents were taken to the station. A search of each of the men was then made. A pipe, the bowl of which contained a residue of marijuana, was extracted from Gilmore's pocket and two cigarettes containing what appeared to be marijuana were extracted from Chapman's pockets. Subsequent analysis revealed that the plastic bag and one cigarette contained marijuana and that the bowl of the pipe contained residue of marijuana.

Respondents were bound over by the magistrate, but the superior court announcing that the facts were "close enough to People v. Griffith," dismissed the information.

People v. Griffith, 19 Cal.App.3d 948 [97 Cal.Rptr. 367], hearing denied

November 4, 1971, discloses a similar factual situation, except that the time was 4:35 p.m. instead of 2 a.m., and instead of a smashed window, the lower two-thirds of the right wind-wing had been smashed, and plainly visible to the officer. In *Griffith,* too, the restraining officer, without the use of a flashlight, saw a complement of hardware used by burglars and a dismantled phonograph. The *Griffith* court held there was not sufficient evidence that the broken wind-wing and the time of the day considered objectively to create ". . . reasonable suspicion that something out of the ordinary has taken place, that the activity is related to a crime, and that defendant is connected to the activity." (P. 950.)

Respondents fortify *Griffith* with persuasive authority. (*Sibron* v. *New York,* 392 U.S. 40 [20 L.Ed.2d 917, 88 S.Ct. 1889]; e.g., *People* v. *Moore* (1968) 69 Cal.2d 674 [72 Cal.Rptr. 800, 446 P.2d 800]; *Stern* v. *Superior Court* (1971) 18 Cal.App.3d 26 [95 Cal.Rptr. 541] [three men standing near the rear of a parked car at 10:45 p.m.]; *People* v. *Horton* (1971) 14 Cal.App.3d 930 [92 Cal.Rptr. 666] [young looking defendant observed driving in a car at 1:15 a.m. with two young passengers]; *People* v. *Callandret* (1969) 274 Cal.App.2d 505 [78 Cal.Rptr. 917] [1:30 p.m.].)

■ It is settled that a mere suspicion or hunch that certain observable factors might be related to criminal activity is not sufficient to support probable cause to stop and frisk and that a police officer must be able to point to specific and articulated facts, which taken together with rational inferences, will warrant the intrusion upon the person. (*Sibron* v. *New York, supra,* 392 U.S. 40.)

Conduct, however, which may not warrant detention in daytime may be sufficient to do so at night. In *People* v. *Henze,* 253 Cal.App.2d 986, 989 [61 Cal.Rptr. 545], we said: "The law in many instances draws a sharp distinction between the controls which may be exercised by peace officers during the nighttime and those to which they are limited during daylight hours, and most of the cases upholding temporary detention for investigation and questioning have arisen out of incidents which occurred at night. (*People* v. *Mickelson,* 59 Cal.2d 448 [citations]; *People* v. *Martin,* 46 Cal.2d 106 [citation]; *People* v. *Blodgett,* 46 Cal.2d 114 [citation].)" (Cf. *Williams* v. *Superior Court* (1969) 274 Cal.App.2d 709 [79 Cal.Rptr. 489] [10 p.m. with other circumstances which warranted detention].)

In *Blodgett,* cited above, the court says at page 117 there is "nothing unreasonable in an officer's questioning persons outdoors at night." (See *People* v. *Superior Court,* 20 Cal.App.3d 384, 388 [97 Cal.Rptr. 646].)

■ Circumstances which determine the reasonableness of a detention must be decided in the total atmosphere of the case. (*People* v. *Ingle,* 53

Cal.2d 407 [2 Cal.Rptr. 14, 348 P.2d 577].) An ordinary householder turning into his driveway at 2 a.m. would be reasonably apprehensive if he saw a parked car occupied by two men, opposite or close to his residence, which remained parked even though the men were not acting in a furtive or suspicious manner, and even if he observed no smashed window and would, in our opinion, under such circumstances be justified in calling the police to investigate. The situation at bench is fortified by the logical inference made and articulated by the officer that the car could have been stolen. The total atmosphere, all of which was aggravated when respondents drove off, required the duty to investigate.

The detention was justified. The subsequent acts of the officers, wholly aside from what may be reasonably expected of officers in the proper performance of their duty, were, insofar as the record shows, with consent and permission of respondents.

The judgment is reversed.

Fleming, J., concurred.

**COMPTON, J.**—I concur in the reversal of the judgment and the well-reasoned majority opinion. However, I feel that it is important to indicate that *People* v. *Griffith,* 19 Cal.App.3d 948 [97 Cal.Rptr. 367] must be distinguished on more than just the difference between daytime and nighttime. The evidence which was suppressed in *Griffith* was recovered during a search of the person of the driver of the vehicle. The court in *Griffith* was careful to point out that the issue of whether the stopping of the vehicle was constitutionally authorized was not determinative in the case.

*People* v. *Moore,* 69 Cal.2d 674 [72 Cal.Rptr. 800, 446 P.2d 800], relied on by respondents, also involved the search of the person of the defendant. Other authorities cited by respondents are similarly distinguishable.

*Sibron* v. *New York,* 392 U.S. 40 [20 L.Ed.2d 917, 88 S.Ct. 1889], involved a nonconsensual search of the person.

*People* v. *Callandret,* 274 Cal.App.2d 505 [78 Cal.Rptr. 917], involved the nonconsensual search of the back of a truck and did not turn on the issue of the right to stop the truck in the first instance.

*Stern* v. *Superior Court,* 18 Cal.App.3d 26 [95 Cal.Rptr. 541], held

that a consent obtained from a defendant who is being held at gunpoint following an illegal arrest is involuntary.

And finally, *People* v. *Horton,* 14 Cal.App.3d 930 [92 Cal.Rptr. 666], simply stands for the proposition that the presence of three young persons in an automobile being driven under nonsuspicious circumstances does not justify the stopping of a vehicle.

Since there was no factual dispute to be resolved by the superior court in its ruling on the motion to suppress, the issue becomes one of law. The reasonableness of police conduct in the context of the Fourth Amendment to the United States Constitution and article I, section 19 of the California Constitution, is not a "fact" to be "found" but is a standard of law to be applied by the court. Thus this court is empowered, in reviewing the order of suppression, to determine the reasonableness of the conduct as a question of law.

In this case the controlling facts in my opinion are (1) that the search of the vehicle was made for the specific purpose of seeking a registration based upon a consent given by the defendant, and (2) that the officers would have had a perfect right under the authority of *People* v. *Blodgett,* 46 Cal.2d 114 [293 P.2d 57] to approach the vehicle and question the occupants while the car was still in its parked position. That right was not lost but was in fact reinforced by the fact that upon observing the officers, the defendants started to pull away and were stopped only a short distance from the original position. Thus the conduct of the officers in stopping the car and questioning the defendants was reasonable and proper and the consent which followed was valid and effectual.

The most recent pronouncement by the California Supreme Court concerning the warrantless search of an automobile is instructive in approaching the circumstances of this case. In *People* v. *Dumas,* 9 Cal.3d 871 [109 Cal.Rptr. 304, 512 P.2d 1208], filed August 14, 1973, the majority very clearly points to the fact that the question of the reasonableness of police conduct in conducting searches is affected by the type of premises searched. The court in *Dumas* re-affirmed the concept of approaching each case on the basis of what appeared to be reasonable under the totality of the circumstances. The effect of the distinction between the search of a home or dwelling or of a person and the search of an automobile is cogently described as follows: "This hierarchy of protection arises not from the application of differing constitutional standards to various locales, but rather from an application of a single standard of reasonableness to all places in accordance with a fundamental understanding that a particular

intrusion into one domain of human existence seriously threatens personal security, while the same intrusion into another domain does not."

In my opinion, the actions of the officers in the case at bench contained no threat to personal security but were conduct which the public would expect from any reasonable, conscientious and dedicated police officer.

The petition of respondent Chapman for a hearing by the Supreme Court was denied October 24, 1973.