38 Cal.App.3d 911 (1974)
113 Cal. Rptr. 648
THE PEOPLE, Plaintiff and Appellant,
v.
RICHARD EARL LATHAN, Defendant and Respondent.
Docket No. 24150.
Court of Appeals of California, Second District, Division One.
May 1, 1974.
*912 COUNSEL
Joseph P. Busch, District Attorney, Harry B. Sondheim and Daniel L. Bershin, Deputy District Attorneys, for Plaintiff and Appellant.
Richard S. Buckley, Public Defender, Harold E. Shabo, David E. McCrory and H. Reed Webb, Deputy Public Defenders, for Defendant and Respondent.
OPINION
LILLIE, J.
Defendant was charged with possession of a .22 caliber revolver (§ 12021, Pen. Code) after having been convicted of first degree robbery on December 3, 1969. The People appeal from order suppressing evidence (§ 1538.5, Pen. Code) and dismissing the cause (§ 1385, Pen. Code). The sole issue is whether defendant was initially unlawfully detained.[1]
*913 (1a) The motion was submitted on the transcript of the testimony taken at the preliminary hearing. Around 10:15 p.m. Officers Watson and Brophy observed defendant, driving a 1960 white Cadillac southbound on La Brea, make a right turn onto a public parking lot of a shopping complex and stop near a liquor store; Officer Watson testified that "[b]ased on my knowledge of crime in that area at that time of night I felt my further observation of the situation was warranted," thus he stopped his vehicle across the street on private property approximately 75 feet from where defendant had parked; the neon sign and other lights of the liquor store were on but he saw no one in the store; he watched defendant exit the Cadillac and place his hands behind his back underneath a three-quarter length jacket; standing directly in front of the liquor store, defendant continued making motions with his hands which appeared to him as if defendant was placing something behind his back, then he saw defendant knock two or three times on the door; he could observe no movement inside and he was "not sure" the liquor store was open "because it was the time of day when they were just closing up," but "possibly" it may have been open; defendant looked in numerous directions and at one point turned to his right and looked over his shoulder in Officer Watson's direction, then immediately re-entered his vehicle (it took 10 to 15 seconds for defendant to walk to his Cadillac) and drove across the parking lot reentering La Brea Avenue; defendant was in front of the liquor store approximately one to two minutes; Officer Watson stopped him on La Brea  "[b]ased on my observations I felt it warranted that I stop the defendant." Defendant exited his vehicle and Officer Watson asked him for some means of identification and the registration to the vehicle; defendant showed him identification and with his consent the officer entered the Cadillac to take the registration certificate from the glove compartment when he observed what appeared to be the barrel of a handgun protruding from under the left front seat of the vehicle; the officer took the loaded gun from beneath the seat and placed defendant in custody.
"[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest," and temporarily detain him therefor. (Terry v. Ohio, 392 U.S. 1, 22 [20 L.Ed.2d 889, 906-907, 88 S.Ct. 1868]; Adams v. Williams, 407 U.S. 143, 145-146 [32 L.Ed.2d 612, 616-617, 92 S.Ct. 1921]; People v. Mickelson, 59 Cal.2d 448, 450 [30 Cal. Rptr. 18, 380 P.2d 658]; People v. Martin, 46 Cal.2d 106, 108 [293 P.2d 52]; People v. Orr, 26 Cal. App.3d 849, 857-858 [103 Cal. Rptr. 266]; People v. Nickles, 9 Cal. App.3d 986, 991 [88 Cal. Rptr. 763]; People v. Adam, 1 Cal. App.3d 486, 488 [81 Cal. Rptr. 738].) However, "the police officer must be able to point *914 to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (Terry v. Ohio, 392 U.S. 1, 21 [20 L.Ed.2d 889, 906, 88 S.Ct. 1868]; People v. Block, 6 Cal.3d 239, 244 [103 Cal. Rptr. 281, 499 P.2d 961].) "Thus, a detention based on `mere hunch' is unlawful (People v. Nailor, 240 Cal. App.2d 489, 493 [49 Cal. Rptr. 616]), even though the officer may have acted in good faith (Terry v. Ohio, supra, 392 U.S. 1, 22 [20 L.Ed.2d 889, 906]). `There must be a "rational" suspicion by the peace officer that some activity out of the ordinary is or has taken place ... some indication to connect the person under suspicion with the unusual activity.... [and] some suggestion that the activity is related to crime.' (People v. Henze, 253 Cal. App.2d 986, 988 [61 Cal. Rptr. 545].) Where the events are as consistent with innocent activity as with criminal activity, a detention based on those events is unlawful. (People v. Moore, supra, 69 Cal.2d 674, 683 [72 Cal. Rptr. 800, 446 P.2d 800]; People v. One 1960 Cadillac Coupe, supra, 62 Cal.2d 92, 96 [41 Cal. Rptr. 290, 396 P.2d 706]; People v. Escollias, 264 Cal. App.2d 16, 19-20 [70 Cal. Rptr. 65]; People v. Hunt, 250 Cal. App.2d 311, 314 [58 Cal. Rptr. 385].)" (Irwin v. Superior Court, 1 Cal.3d 423, 427 [82 Cal. Rptr. 484, 462 P.2d 12]; People v. Gale, 9 Cal.3d 788, 798 [108 Cal. Rptr. 852, 511 P.2d 1204]; People v. Triggs, 8 Cal.3d 884, 895 [106 Cal. Rptr. 408, 506 P.2d 232]; People v. Superior Court [Simon], 7 Cal.3d 186, 200 [101 Cal. Rptr. 837, 496 P.2d 1205]; Cunha v. Superior Court, 2 Cal.3d 352, 356 [85 Cal. Rptr. 160, 466 P.2d 704]; People v. Gravatt, 22 Cal. App.3d 133, 136-138 [99 Cal. Rptr. 287]; People v. Griffith, 19 Cal. App.3d 948, 950 [97 Cal. Rptr. 367]; People v. Adam, 1 Cal. App.3d 486, 489 [81 Cal. Rptr. 738].) The circumstances that distinguish the activity of the person detained from that of any other person must be based on an objective perception of events rather than the subjective feelings of the detaining officers. (Irwin v. Superior Court, 1 Cal.3d 423, 426 [82 Cal. Rptr. 484, 462 P.2d 12]; People v. Moore, 69 Cal.2d 674, 682 [72 Cal. Rptr. 800, 446 P.2d 800].)
The weakness of the case at bench lies in the absence in the record of any testimony concerning precisely the suspicion, if any, Officer Watson had, and the failure of the officer to point to specific and articulable facts which reasonably warranted "a rational suspicion" that defendant's activity was out of the ordinary or criminally motivated. (People v. Martin, 9 Cal.3d 687, 692 [108 Cal. Rptr. 809, 511 P.2d 1161]; People v. Block, 6 Cal.3d 239, 244 [103 Cal. Rptr. 281, 499 P.2d 961]; Cunha v. Superior Court, 2 Cal.3d 352, 356 [85 Cal. Rptr. 160, 466 P.2d 704]; Irwin v. Superior Court, 1 Cal.3d 423, 427 [82 Cal. Rptr. 484, 462 P.2d 12]; People v. Henze, 253 Cal. App.2d 986, 988 [61 Cal. Rptr. 545].) The record *915 supports no more than an inarticulated hunch of the police officer (People v. Gale, 9 Cal.3d 788, 797-798 [108 Cal. Rptr. 852, 511 P.2d 1204]; People v. Chapman, 34 Cal. App.3d 44, 47 [109 Cal. Rptr. 840]; People v. Orr, 26 Cal. App.3d 849, 858 [103 Cal. Rptr. 266]; People v. Gravatt, 22 Cal. App.3d 133, 136-139 [99 Cal. Rptr. 287]) on the basis of which the detention was unlawful.
Whether Officer Watson's conduct was reasonable depends on all of the facts and circumstances peculiar to it and totally considered. (People v. Ingle, 53 Cal.2d 407, 412 [2 Cal. Rptr. 14, 348 P.2d 577]; People v. Nickles, 9 Cal. App.3d 986, 991 [88 Cal. Rptr. 763].) After defendant stopped near the liquor store, Officer Watson felt "further observation was warranted" because of his "knowledge of crime in that area at that time of night"; the lights were on but he saw no one in the store and was not sure if it was open since at that time of day liquor stores in that area are "just closing up."
(2) While "knowledge of crime in that area" at 10:15 p.m. well may justify further observation of defendant, and a described crime rate may be considered as part of "the total atmosphere of the case" (People v. Gravatt, 22 Cal. App.3d 133, 136 [99 Cal. Rptr. 287]) in determining whether the detention was reasonable, the officer here, assigned to Wilshire Accident Investigation Divison, did not indicate the type of "crime" involved in that area or infer that he had knowledge of any report of a particular crime committed or being committed there or describe the crime rate at that location. Even a high crime area without more does not convert defendant's conduct into sufficient cause to detain him. (Cunha v. Superior Court, 2 Cal.3d 352, 357 [85 Cal. Rptr. 160, 466 P.2d 704]; People v. Moore, 69 Cal.2d 674, 683 [72 Cal. Rptr. 800, 446 P.2d 800].)
"[T]hat time of night" was also a factor considered by Officer Watson. It is true that conduct which might not warrant detention in the daytime may be sufficient at night (People v. Chapman, 34 Cal. App.3d 44, 47 [109 Cal. Rptr. 840]; People v. Superior Court [Martin], 20 Cal. App.3d 384, 388 [97 Cal. Rptr. 646]; People v. Henze, 253 Cal. App.2d 986, 989 [61 Cal. Rptr. 545]), but 10:15 p.m. is hardly a late or unusual hour. The time of night, of course, should be considered in relation to the location  its remoteness, available lighting, the presence of others nearby and its accessibility.
(1b) Officer Watson watched defendant exit his white Cadillac, make movements with his hands behind his back under his three-quarter length jacket in such a way that it appeared to him defendant was placing something behind his back, knock on the front door several times, look in *916 numerous directions and at one point turn to his right and look over his shoulder in his direction, re-enter his vehicle and drive across the parking lot into the traffic on La Brea Avenue. To invest the observable circumstances relied on by the officer with guilty significance, they must be such as to warrant "a rational suspicion" that some activity out of the ordinary is taking place and suggest that it is related to crime. Obviously Officer Watson must have interpreted defendant's movements as "furtive," but he did not so testify nor did he articulate specific facts from which he could have concluded that defendant had a weapon in his hands begin his back. Even were defendant's movements "furtive" in nature, to justify detention the "furtive gestures" or "furtive movements" must be such as to have a criminal connotation, and any attending circumstances may be considered in this connection. (People v. Superior Court [Kiefer], 3 Cal.3d 807, 826 [91 Cal. Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559].) The area was directly accessible from La Brea Avenue, not remote, the lights were on in the liquor store and it may have been open, defendant drove a white Cadillac (easily identifiable), the hour was not late, defendant was not under suspicion of any criminal activity and police had no report of a recent robbery in the area with a description of a suspect. There was nothing unusual about defendant knocking on the front door of a liquor store at 10:15 p.m. on a Saturday night (January 27, 1973); his conduct was no different than that of any patron who wanted to buy liquor, cigarettes or other merchandise. The officer probably had a "hunch" that defendant had a weapon under his coat and that had someone opened the door there would have been a holdup, but he neither said so nor testified that he saw any suggestion of an object in his hands or beneath defendant's coat let alone a weapon. What defendant did with his hands  whether he was scratching himself, hitching up his pants, tucking his shirt into his pants or sticking a gun into the back waistline of his pants  is purely speculative but his conduct under the circumstances is as susceptible of an innocent interpretation as a guilty one. On the face of the officer's testimony it does not appear that defendant's movements were "furtive" or that they were invested with guilty significance. Thus the fact that the incident occurred at 10:15 at night is not of great import for nighttime "does not, without more, transform an innocent gesture into a culpable one." (People v. Superior Court [Kiefer], 3 Cal.3d 807, 825 [91 Cal. Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559].)
Appellant correctly argues that the duty of a police officer is to detect crime and protect an actual or potential victim of crime; and without doubt it was the duty of Officer Watson to keep defendant under observation, but he had no report of a recent crime committed or in the process of being *917 committed in that area with a description of the suspect or that one described as defendant driving a white Cadillac was under suspicion of any criminal act, and there is no testimony that he recognized defendant as someone he knew, or that defendant fit the description of a suspect at large.
Finally, appellant points to defendant's conduct in looking in various directions then at one point turning to his right and looking over his shoulder in Officer Watson's direction after which he entered his Cadillac and drove away, citing People v. Gale, 9 Cal.3d 788 [108 Cal. Rptr. 852, 511 P.2d 1204]; People v. Rosenfeld, 16 Cal. App.3d 619 [94 Cal. Rptr. 380], and People v. Courtney, 11 Cal. App.3d 1185 [90 Cal. Rptr. 370] (all cases in which defendant obviously saw the officers and recognized them as such, or their vehicle and identified it as a police car). The inference appellant seeks to have us draw is that upon seeing the officers defendant fled from the scene and that such flight showed a consciousness of guilt and justified an investigation to determine the reason for it. Although the evidence shows that at one point defendant looked over his shoulder in the officer's direction, then walked to the Cadillac, it does not show that the officers were in uniform or in a standard marked black and white patrol car (even though at one point the officer referred to his car as a "police vehicle" and subsequently stopped defendant's car by flashing his lights which could have been a red light, the high beam of the headlights or a spot light) and, assigned to Wilshire Accident Investigation Division, the officers could have been in plain clothes driving an unmarked vehicle. Nor is there evidence that defendant could see or actually saw the officers or their vehicle or recognized them as officers or the car as a police vehicle; the record is silent as to the lighting conditions or obstructions between defendant and the officers, and the evidence shows the police vehicle was parked across the street on private property 75 feet away. Moreover all the officer testified he saw was defendant "turn to his right and look over his shoulder in my direction"; he did not claim defendant faced him directly or looked at him. In People v. Superior Court [Kiefer], 3 Cal.3d 807, 821-822 [91 Cal. Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559], the court stated, "First, the argument assumes that the movements in question were purposeful responses to the officer's appearance on the scene. But the person observed might not in fact have seen the police car, in which event any movements he made would be irrelevant. If he did see a vehicle following, he might not have recognized it to be a police car; many of the `furtive gesture' cases have arisen in the dark of night, with the officer's car some distance behind." Nor can it be said that defendant fled the liquor store to the Cadillac. He did not run but "walked" to the car and, according to the officer, it took 10 to 15 seconds for him *918 to reach his vehicle; defendant did not drive away hurriedly or at any point attempt to elude the officers; and when signalled to stop on La Brea he did so immediately and exited the vehicle to talk to them. Under the circumstances we cannot say that defendant's movements were suspect; it is more reasonable to conclude that finding the store closed for business defendant looked around for other patrons or store employees and seeing none decided to leave and did so.
Although police officers through their experience develop the ability to perceive the unusual and suspicious circumstances (People v. Gale, 9 Cal.3d 788, 795-796 [108 Cal. Rptr. 852, 511 P.2d 1204]) and the circumstances must be considered in light of the officer's experience (People v. Block, 6 Cal.3d 239, 244 [103 Cal. Rptr. 281, 499 P.2d 961]), Officer Watson has failed to point to specific articulable facts that would justify the conclusion that defendant's movements were invested with a criminal significance. The People have failed to present an adequate record to substantiate the reasonableness of the detention. On the face of the record the events are as consistent with innocent activity as with criminal activity and the detention based on these events was unlawful.
The order is affirmed.
Wood, P.J., and Thompson, J., concurred.
NOTES
[1] It was on this issue the trial court granted the 1538.5 motion based on certain points and authorities (raising as a matter of law the legality of defendant's initial detention) submitted in a case (People v. Hill) previously heard by the court, incorporated in his argument by the public defender and attached to appellant's opening brief herein as exhibit A.