[Civ. No. 44074. First Dist., Div. One. Oct. 5, 1978.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA
COUNTY, Respondent;
REGINALD ROY BACKEY, Real Party in Interest.

1022

COUNSEL

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Thomas A. Brady and Kristofer Jorstad, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Sheldon. Portman, Public Defender, Robert A. Weeks and Frank D. Berry, Jr., Deputy Public Defenders, for Real Parties in Interest.

OPINION

**ELKINGTON, J.**—The single issue of this mandate proceeding instituted by the People is whether a police officer *unlawfully detained* Reginald Roy Backey, the real party in interest, prior to development of probable cause for his arrest on a charge of burglary. A magistrate had found no unlawful detention, and held Backey to answer for trial in the superior court. Disagreeing, the superior court ordered suppressed the burglary's fruits found in Backey's possession.

The controlling authority of our inquiry follows.

*People* v. *Gale,* 9 Cal.3d 788, 797-798 [108 Cal.Rptr. 852, 511 P.2d 1204]. " 'While a detention of a citizen by a police officer based on a

"mere hunch" is unlawful, if there is a rational *suspicion* that some activity out of the ordinary is taking place, and some *suggestion* that the activity is related to crime, a detention is permissible.' "

*People* v. *Flores,* 12 Cal.3d 85, 91 [115 Cal.Rptr. 225, 524 P.2d 353]. "Where there is a rational belief of criminal activity with which the suspect is connected, a detention for reasonable investigative procedures infringes no constitutional restraint."

*People* v. *Harris,* 15 Cal.3d 384, 388-389 [124 Cal.Rptr. 536, 540 P.2d 632] (cert. den., 425 U.S. 934 [48 L.Ed.2d 175, 96 S.Ct. 1664]). " '[A] police officer may stop and question persons on public streets . . . when the circumstances indicate to a reasonable man in a like position that such a course of action is called for in the proper discharge of the officer's duties. . . . The good faith suspicion which warrants an officer's detention of a person for investigative reasons is necessarily of a lesser standard than that required to effect an arrest. . . . Where there is a rational belief of criminal activity with which the suspect is connected, a detention for reasonable investigative procedures infringes no constitutional restraint.' "

*In re Tony C.,* 21 Cal.3d 888, 892-899 [148 Cal.Rptr. 366, 582 P.2d 957]. There the high court considered the competing public interests of the problem before us: (1) "the right of every person to enjoy the use of public streets, buildings, parks, and other conveniences without unwarranted interference or harassment by agents of the law" (p. 893); and (2) the public expectation that " 'in the proper discharge of the officer's duties' " (p. 894), he will investigate his reasonable suspicions of criminal activity. The court said: "Balancing these factors, the courts have concluded that in order to justify an investigative stop or detention the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity. Not only must he subjectively entertain such a suspicion, but it must be objectively reasonable for him to do so: the facts must be such as would cause any reasonable police officer in a like position, drawing when appropriate on his training and experience . . . to suspect the same criminal activity and the same involvement by the person in question. The corollary to this rule, of course, is that an investigative stop or detention predicated on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith. . . ." (P. 893, fn. omitted.) "The

possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct. Indeed, the principal function of his investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal—to 'enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges.' " (P. 894.)

We are concerned only with the evidence whether or not the police officer reasonably entertained a *"good faith suspicion"* (*People* v. *Harris, supra,* 15 Cal.3d at p. 388) that as to Backey " 'some activity out of the ordinary [was] taking place' " with a " *'suggestion* that the activity [was] related to crime, . . .' " (*People* v. *Gale, supra,* 9 Cal.3d at p. 798.) It follows.

A police officer received an official daytime radio message that a citizen informer had reported a suspicious stranger in a residential area of Palo Alto. It was a high burglary area—"[t]he highest in the city." The burglaries mostly took place in the daylight hours, 8 a.m. to 5 p.m. The suspicious person was closely described. A short time later the police radio reported that the same citizen had again, in a different part of the city, seen the suspicious person who was then "concealing something under his coat." The officer soon saw the described person; his pockets "obviously" contained "large items." One of the items which could be seen was a portion of a camera. The officer stopped his car and approached and talked to Backey; "it was something to the effect that we had a report of a suspicious person in the south end of town and he matched the description and I wanted to talk to him about it." The policeman conceded that pending the investigation, Backey was not "free to leave."

While, of course, there "is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets" (*Terry* v. *Ohio,* 392 U.S. 1, 34 [20 L.Ed.2d 889, 913, 88 S.Ct. 1868] (conc. opn. of White, J.); *People* v. *Manis,* 268 Cal.App.2d 653, 662-663 [74 Cal.Rptr. 423]; and see *People* v. *Blodgett,* 46 Cal.2d 114, 117 [293 P.2d 57]; *People* v. *Chapman,* 34 Cal.App.3d 44, 47 [109 Cal.Rptr. 840]), here the superior court reasonably found a show of police authority. It has been said that, at least ordinarily, "a detention occurs if the suspect is not free to leave at will—if he is kept in the officer's presence by physical restraint, threat of force, or assertion of authority." (*In re Tony C., supra,* 21 Cal.3d 888, 895.) There was thus a "detention," which will be justified only where there is the *reasonable* "good faith suspicion" of *Gale, Flores, Harris* and

*Tony C.* Nothing in the record suggests, nor does Backey contend, that the officer's obvious suspicion was not in good faith; the immediate issue is whether the officer had formed a *suspicion of criminal activity* and, if so, whether the suspicion was *reasonable.*

The superior court's suppression ruling was based upon its conclusion that prior to the detention, the police officer was *informed of no "evidence of a crime in this case."*

It seems proper, therefore, to consider whether the " 'good faith suspicion which warrants an officer's detention of a person for investigative reasons' " (*People* v. *Harris, supra,* 15 C.3d 384, 388-389) requires that he previously be furnished with "evidence of a crime."

■ "Suspicion" is commonly defined as: "imagination or apprehension of something wrong or hurtful without proof or on slight evidence" (Webster's New Internat. Dict. (3d ed. 1965) p. 2304); " 'the imagination of the existence of something without proof, or upon very slight evidence, or upon no evidence at all.' " (*Cook* v. *Singer Sewing Machine Co.,* 138 Cal.App. 418, 421 [32 P.2d 430]). ■ California's courts, as noted *supra* in *Gale* and *Tony C.,* have modified these definitions as applied to police detention, making it clear that such a detention may not be based upon "mere curiosity, rumor, or hunch." (*In re Tony C., supra,* 21 Cal.3d at p. 894.) There must instead be " 'a rational *suspicion* that some activity out of the ordinary is taking place, and some *suggestion* that the activity is related to crime, . . .' " (*People* v. *Gale, supra,* 9 Cal.3d at p. 798.) And the suspicion "must be based on an objective perception of events rather than the subjective feelings" of the officer. (*Irwin* v. *Superior Court,* 1 Cal.3d 423, 426 [82 Cal.Rptr. 484, 462 P.2d 12].)

■ From all of the foregoing it will appear that a police detention may be based upon specific and articulable matters personally observed by the officer or communicated to him by others. Such matters must be something more than a rumor or such as will cause conjecture or a mere hunch of criminal activity. ■■■■ They will ordinarily be something less than an honest and reasonably held strong suspicion of such wrongdoing, for at that point the officer would have probable cause to arrest.*

*" 'Cause for arrest exists when the facts known to the arresting officer "would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." ' " (*People* v. *DeVaughn,* 18 Cal.3d 889, 895 [135 Cal.Rptr. 786, 558 P.2d 872].)

██ They will be such as "strikes a balance between a person's interest in immunity from police interference and the community's interest in law enforcement. It wards off pressure to equate reasonable cause to investigate with reasonable cause to arrest, thus protecting the innocent from the risk of arrest when no more than reasonable investigation is justified." (*People* v. *Mickelson,* 59 Cal.2d 448, 452 [30 Cal.Rptr. 18, 380 P.2d 658].)

██ The evidence of the instant case manifests the officer's good faith *suspicion* of Backey's criminal activity, a suspicion based on specific, articulable, and objective, although perhaps "slight," information, and not upon "mere curiosity, rumor, or hunch." Backey's detention was authorized by the authority of *Gale, Flores, Harris* and *Tony C.* It was accordingly without constitutional fault, and the superior court erroneously used a standard requiring "evidence of a crime in this case."

Backey appears to concede—at least he makes no contrary contention—that assuming the right to detain, the officer had a corresponding right for his own safety to make, as he did, a minimally intrusive pat-down search. (See *People* v. *Juarez,* 35 Cal.App.3d 631, 636 [110 Cal.Rptr. 865].)

Another issue appears. ██ It is argued that the detention was unduly, and thus unconstitutionally, delayed while the officer sought radio and computer information whether property observed in Backey's possession was stolen. In respect of this issue, the following appears.

Upon Backey's detention the officer told him of the citizen's reports of a suspicious person of Backey's description, and said he wanted to talk to him about it. The officer "noticed his pockets were bulging and he had something underneath his jacket, . . ." Referring to a camera a portion of which was in plain sight, Backey said that it was his property. The officer then "started asking him about the functions of the camera, the lens settings and the 'f' stop, and he was unable to answer the questions." The officer testified, "I asked him if I could see the camera. . . . He said yes and he took it out of the case and gave it to me." It had a hand engraved number on it, and the communications system "ran it as a California driver's license and subsequently came back to a residence in the south part of town where the defendant had been seen . . . ." Further radio information indicated that the camera had been stolen earlier that day in a burglary, whereupon Backey was arrested. The entire detention lasted about 15 to 20 minutes.

A detention reasonably effected must also be reasonable in its duration. (*People* v. *Gilliam*, 41 Cal.App.3d 181, 188 [116 Cal.Rptr. 317], and see authority there cited.) At the instant detention's commencement it appeared reasonably probable that Backey was in possession of stolen property. It became reasonable to continue the investigation, thus to " 'enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges.' " (*In re Tony C., supra,* 21 Cal.3d at p. 894.) The relatively short continued detention for this purpose does not appear to have been unreasonable.

The peremptory writ of mandate will issue.

Racanelli, P. J., and Newsom, J., concurred.

The petition of the real party in interest for a hearing by the Supreme Court was denied November 30, 1978. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.